# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2595 | **DATE** | 8/23/2001 |
| **CASE TITLE** | Fireman's Fnd Ins vs. Panalpina, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant Fireman's motions (Docs 35-1 & 35-2) for summary judgment on the issues of liability and limitation of liability under the Warsaw Convention and deny its motion for summary judgment on the issue of the amount of damages. Summary judgment is hereby entered in favor of the plaintiff and against defendant Panalpina, Inc. in the amount of $45,650.00. All matters having been resolved, final judgment is hereby entered.
(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIREMAN'S FUND INSURANCE COMPANY )
a/s/o MOTOROLA, INC., )
)
        Plaintiff, )
)
vs. ) 00 C 2595
)
PANALPINA, INC. (a New York corporation, )
FINE AIR SERVICES INC. (a Florida )
corporation) CHALLENGE AIR CARGO, INC., )
(a Florida corporation) and MONROE )
TRANSPORTATION, INC., (an Illinois )
corporation), )
)
        Defendants. )

AUG 24 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on Plaintiff's motion for partial summary judgment. For the reasons set forth below, the Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

This case involves liability for a shipment of cellular phones lost in transit between Chicago, Illinois, and Caracas, Venezuela. A previous order of this court has reduced the parties to this action to include only Fireman's and Panalpina. Fireman's Fund Ins. Co. v. Panalpina, Inc., 2001 WL 59037 (N.D. Ill. Jan. 19, 2001).

On or about April 28, 1998, Defendant ("Panalpina") issued an air waybill[1] numbered ORD 686191 to Motorola for the shipment from Chicago to Caracas. The air waybill listed Panalpina as the issuing carrier, a company called Fine Air as the first carrier, Chicago O'Hare Airport as the airport of departure, and flight number FB447 as the flight on which the goods would be shipped. Rather than being transported in conformity with the information on the air waybill, however, the telephones traveled by truck from Itasca, Illinois, to Miami, Florida, and were there consolidated with other Panalpina shipments and flown to Caracas on a carrier called Challenge Air aboard flight number WE 15101. At no point were the phones transported on any Fine Air flight. When the shipment was delivered to the Caracas consignee, Cellstar Cellular, 227 kilograms of telephones were missing.

Motorola had insured the shipment under a property insurance policy with Plaintiff Fireman's Fund ("Fireman's"). Under the policy, Fireman's was required to pay Motorola $45,650, the value of the lost phones. Fireman's is therefore subrogated to the rights of Motorola against Panalpina. Fireman's has moved for summary judgment that Panalpina is liable for the loss, that it may not limit its liability under the

---

[1] An air waybill is a written document containing information regarding a shipping arrangement between a shipper and an air carrier. It contains information such as the places of origin and destination and a description of the goods to be shipped. See Warsaw Convention, Art. 8; Black's Law Dictionary 1593 (6th ed. 1990).

Warsaw Convention, and that it is liable for actual damages, prejudgment interest, attorneys' fees, and costs.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 312, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we turn to the merits of Fireman's motion.

## DISCUSSION

A. Liability for the Missing Phones

Panalpina admits in its response to the motion for summary judgment that it is liable for the loss of the missing phones, so we grant summary judgment in favor of Fireman's as to the issue of Panalpina's liability.

B. Limitation of Liability Under the Warsaw Convention

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, commonly known as the Warsaw Convention, governs international transportation of persons, baggage, or goods by air and thus applies to this dispute.[2] Convention for the Unification of Certain Rules Relating to International Transportation by Air, art. I, para. 1, 49 Stat. 3000, T.S. 876 (1934), *reprinted in* 49 U.S.C. § 40105. The overall purpose of the convention, as the name implies, was to make air transportation and travel more uniform and thus more reliable. Trans World Airlines v. Franklin Mint Corp., 466 U.S. 243, 246-7, 104 S. Ct. 1776, 1780, 80 L.Ed 2d 273, 278 (1984); Onyeanusi v. Pan American World Airways, Inc., 952 F.2d 788, 792 (3d Cir. 1992). Section III of the Convention addresses transportation of goods,

---

[2] Because the Warsaw Convention clearly applies to this dispute over goods transported internationally by air, we will not address any of Panalpina's arguments regarding paragraph 4 of the contract of carriage, which is limited by its own terms to carriage to which the Warsaw Convention does not apply.

specifically dealing with air waybills and the information they must contain. Warsaw Convention, Arts. 5–16.

Article 8 lists the particular information that must be included in an air waybill.[3] If a carrier issues an air waybill that includes all of the particulars of Article 8, it may limit its liability for any loss of or damage to the goods. Warsaw Convention, Art. 22(2). If the air waybill is incomplete or incorrect, Article 9 strips the carrier of the limited liability protection. Warsaw Convention, Art. 9; Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc., 94 F.3d 29, 33 (2nd Cir. 1996); Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1033 (2nd Cir. 1996); Maritime Ins. Co. Ltd. v. Emery Air Freight Corp., 983 F.2d 437, 440 (2nd Cir. 1993). Although many cases have come out of the Second Circuit addressing the sufficiency of air waybills, the Seventh Circuit has

---

[3] Article 8 states, in pertinent part, that an air waybill must contain:
(a) The place and date of its execution;
(b) The place of departure and of destination;
(c) The agreed stopping places...;
(d) The name and address of the consignor;
(e) The name and address of the first carrier;
(f) The name and address of the consignee...;
(g) The nature of the goods;
(h) The number of packages, the method of packing, and the particular marks or numbers upon them;
(i) The weight, the quantity, the volume, or dimensions of the goods;
...
(q) A statement that the transportation is subject to the rules relating to liability established by this convention.

not yet construed the provisions of the Convention at issue in this case. In addition, the specific purpose of the Article 8 particulars has been a subject of some disagreement in the federal courts. Some cases have held that the air waybill passes muster as long as it gives the shipper notice of the international nature of the shipment. See, e.g., Brinks, 93 F.3d at 1035; AI Marine Adjusters, Inc. v. Forwarding Systems, Int'l, 1999 WL 199588, at *21, 22 (N.D. Ill. March 31, 1999). However, the prevailing view is that air waybills serve a greater function than just to identify the shipment as one traveling through international channels. Federal Ins. Co. v. Yusen Air & Sea Serv., 232 F.3d 312, 314 (2nd Cir. 2000); InterCargo Ins. Co. v. China Airlines, 208 F.3d 64, 67–68 (2nd Cir. 2000); Tai Ping, 94 F.3d at 32–33; Maritime, 983 F.2d at 438–439, 441; Fireman's Fund v. El Al Airlines, 2001 WL 32847, at *3–4 (N.D. Ill. Jan. 12, 2001). For example, waybills have been found deficient under Article 8 when the omitted or incorrect information had nothing to do with the international nature of the shipment. See, e.g., Maritime, 983 F.2d at 441 (not allowing limited liability when waybill omitted information regarding place and date of execution of waybill, agreed stopping places, and name and address of first carrier, even though international nature of shipment was clear from departure and destination cities). In addition, the applicable case law has clarified that information required by Article 8 must not only be present, i.e., not omitted, but also must be accurate and complete. InterCargo, 208 F.3d at 69–70; Tai Ping, 94 F.3d at 33; Maritime, 983 F.2d at 440. Fireman's claims

that the air waybill issued to Motorola lacked two required pieces of information: information identifying the first carrier, flight number, and place of departure of the shipment; and inclusion of Miami as an agreed stopping place.

The parties expressly agree to the following facts. First, on or about April 28, 1998, Panalpina issued Air Waybill No. ORD 686191 to Motorola for the transport of cellular phones from Illinois to Venezuela. Pl.'s Stmt. Uncont. Facts, para. 5; Def.'s Resp. to Pl.'s Stmt. of Facts, para. 1. Second, the air waybill did not list Miami as an "agreed stopping place." Pl.'s Stmt. Uncont. Facts, para. 8; Def.'s Resp. to Pl.'s Stmt. of Facts, para. 4. Third, the waybill listed Fine Air as the first carrier and FB 447 as the flight that would transport the goods to Venezuela. Pl.'s Stmt. Uncont. Facts, para. 10; Def.'s Resp. to Pl.'s Stmt. of Facts, para. 2. Lastly, they agree that Motorola consigned the shipment of telephones to Panalpina at Panalpina's Itasca, Illinois, depot on April 25, 1998. Def.'s Add'l Undisputed Facts, para. 7.

That is the extent of the facts to which the parties have expressly agreed. However, Fireman's included further facts in their statement of undisputed facts that Panalpina did not controvert in its response. Local Rule 56.1 requires that a party opposing a motion for summary judgment respond to each of the undisputed facts set forth in the movant's statement of facts. Under the rule, if the nonmovant does not controvert a material fact contained in the movant's statement of facts, that fact is deemed admitted. Therefore, the following uncontroverted facts are deemed admitted.

First, air waybill No. ORD 686191 was the only air waybill Panalpina issued to Motorola regarding the shipment of cellular telephones, even though Challenge Air issued Air Waybill 307 0930 1935 on or about April 30, 1998, which stated that Challenge Air would carry the goods from Miami, Florida, to Venezuela. Caudill Dep. at 61-62, Pl.'s Stmt. Uncont. Facts, paras. 20, 26. Second, Fine Air did not transport the shipment for any portion of its journey from Illinois to Venezuela. Pl.'s Stmt. Uncont. Facts, para. 16. Third, the shipment traveled by truck from Chicago to Miami and then was flown to Venezuela on a Challenge Air flight. Pl.'s Stmt. Uncont. Facts, paras. 13, 27, 30. These facts form the basis from which we must determine if Fireman's is entitled to summary judgment.

1. Flight Information

The parties agree that the air waybill listed Fine Air as the first carrier for the shipment of phones, flight number FB447 as the flight on which the shipment would be transported, and Chicago O'Hare Airport as the airport of departure. See Pl.'s First Am. Compl., Ex. A; Dep. of Robert Caudill [hereinafter Caudill Dep.] at 41. They further agree that Fine Air did not transport the shipment at any time, that the shipment was not transported via flight FB447, and that the shipment departed by truck from Itasca, Illinois, not by plane from O'Hare. Pl.'s Stmt. Uncont. Facts, paras. 13, 16, 27, 30. The first, and as far as we know the only, airport from which the shipment departed was Miami International. Pl.'s Stmt. Uncont. Facts, paras. 13, 27, 30.

From the foregoing, we can conclude that the flight information given on the face of the air waybill did not correspond to the actual means of transportation for the Venezuela shipment. However, under applicable case law this is not necessarily a fatal flaw. Brink's, 93 F.3d at 1033. An air waybill is deemed to "contain" information that is properly incorporated by reference into the air waybill. Id. However, carriers who incorporate information into their air waybills rather than explicitly including it on the face of the waybill run the risk that the incorporation will be unsuccessful. InterCargo, 208 F.3d at 69; Tai Ping, 94 F.3d at 33.

Panalpina has produced no evidence of any connection between Fine Air flight FB447 and Challenge Air or between Panalpina and Challenge Air such that Motorola would be able to determine that their shipment would be transported by Challenge Air to Venezuela. Caudill Dep. at 90. The air waybill contains no incorporation of documents that would provide Motorola with the knowledge of the different flight.

Panalpina argues that the listing of Fine Air as the first carrier is not relevant because Panalpina was actually the first carrier in the transaction. Because the waybill's information regarding Panalpina was correct, their argument goes, the waybill contained correct information with regard to the first carrier. They give no explanation as to why, if they were the first carrier, the information regarding Fine Air flight FB447 was listed on the air waybill in the spaces pertaining to the first carrier. They argue that because Motorola figured out whom to sue, the information in the air

waybill was sufficient. Panalpina attempts to argue that the information was not omitted because something appeared in the box marked "First Carrier" but neglects to address the further requirement that the included information be accurate and complete. Panalpina could conceivably be considered the first carrier. <u>Martin Marietta Corp. v. The Harper Group</u>, 950 F. Supp. 1250 (S.D.N.Y. 1997). However, the information Panalpina supplied regarding the first carrier was not omitted, which would allow us to infer who the first carrier was from what was written on the waybill, as in <u>Martin Marietta</u>. Rather, the information supplied was incorrect.

Panalpina also argues that under the terms of the contract of carriage, Motorola had agreed to allow Panalpina to use alternate carriers or aircraft or without notice to the shipper use other means of transportation. This argument, while internally consistent, disintegrates when read in the context of the Warsaw Convention, which specifically provides that a carrier may not make regulations that conflict with the provisions of the convention. Warsaw Convention, Art. 33. Panalpina wishes us to conclude that the terms of its contract of carriage excuse it from providing accurate information regarding the first carrier, which would clearly conflict with the provisions of Article 8 of the Convention. This we will not do.

In this case, Panalpina had another air waybill, issued to it by Challenge Air, that contained the correct information, but that waybill was not passed on to Motorola, nor was the information it contained readily available from another source. Pl.'s First Am.

Compl., Ex. B. Panalpina seems to argue that the fact that the correct information was listed somewhere is sufficient to allow them to limit their liability. Obviously, this argument will not fly.

Panalpina goes on to assert that they did not need to provide Motorola with the information stating that the shipment would be carried on Challenge Air, because Motorola never specifically requested that information. This argument makes no sense, because if carriers were required only to give the information that the shipper specifically requested, there would be no need to mandate that the air waybill contain any information at all.

Whether the first carrier should have been listed as Challenge Air or Panalpina, it was actually listed as Fine Air. The shipment traveled on flight WE15101, not FB447. Finally, the airport from which the shipment departed was Miami International, not Chicago O'Hare. The information regarding the name and address of the first carrier, the flight number, and the airport of departure, were therefore incorrect and insufficient in terms of the Warsaw Convention. Therefore, we need look no further to determine that the waybill does not satisfy the requirements of Article 8.

2. Agreed Stopping Places

Because we find that the air waybill was insufficient because of the incorrect flight information, we need not reach the question of whether Panalpina was required to list Miami as an agreed stopping place and the consequences of their failure to do

so. However, the lack of correct information regarding Miami as an agreed stopping place supplies an adequate alternative ground for our decision regarding Panalpina's inability to limit their liability.

Fireman's further asserts that the omission of Miami as an agreed stopping place from the air waybill precludes Panalpina from limiting its liability. The Convention, though certainly including "agreed stopping places" in the list of things that must be contained in any air waybill, does not provide any guidance as to what constitutes an agreed stopping place. The parties have differing views of the exact meaning of that term, and indeed much of the litigation in this arena has focused on that issue. Fireman's asserts that "agreed stopping place" means anywhere that the shipment stops before reaching its final destination; Panalpina claims that "agreed stopping places" are only stops that are not within either the country of departure or the country of destination.

Panalpina raises a panoply of arguments in support of its position that they did not need to include Miami as an agreed stopping place on the air waybill. It is settled law that a carrier can provide the required information on an air waybill by incorporating other documents, such as timetables, by reference, but the additional information must be "readily available" to the shipper or the purposes of the Convention are not served. See, e.g., Brinks, 93 F.3d at 1036.

Panalpina first claims that a proposal was sent to Motorola that stated that shipments could travel via Miami. However, this proposal was not incorporated into the waybill, so the waybill cannot be considered to contain that additional information. Tai Ping, 94 F.3d at 33.

Panalpina also avers that the Convention's requirement to list agreed stopping places extends only to places that would be outside of the country of departure, and thus because Miami and Chicago are both within the United States, Panalpina was not required to list Miami as an agreed stopping place. Nothing in the text of the treaty calls for such a distinction, and other courts have come to exactly the opposite conclusion. See, e.g., Tai Ping Ins. Co. v. Expeditors, Int'l., 34 F. Supp. 2d 169 (S.D.N.Y. 1998) (finding air waybill that did not include New York as an agreed stopping place was insufficient under Article 8 even though the flight route included only the United States and Hong Kong).

Panalpina further argues that the air waybill terms reserved to Panalpina the right to change the route without notice to the shipper. In support of this argument, they cite Ins. Co. of North Am. v. Federal Express, 189 F.3d 914 (9th Cir. 1999), which held that an air waybill that did not include all agreed stopping places still complied with the Convention's requirements. However, the contract of carriage in that case read "You agree that this shipment may be carried via intermediate stopping places that we deem appropriate" and incorporated the FedEx Service Guide, which read "FedEx will

determine the routing of all shipments. There are no stopping places which are agreed to at the time of tender of the shipment. We reserve the right to divert any shipment in order to expedite its delivery (including the use of other carriers)." Id. at 916–917. Panalpina's contract contained no such language, so their reliance on that case is misplaced.

Finally, Panalpina claims that Motorola should have known from its course of dealing with Panalpina that the shipment details could change after the air waybill was issued. However, the purpose of the Convention was to avoid exactly this kind of situation, where the shipper consigns goods to the carrier and has no idea how the shipment will be carried to its ultimate destination. This court can find no indication of an exemption for parties based on a continuous course of dealing in the language of the Convention or the case law applying it, and indeed, Panalpina cites no support for this assertion. The cases they cite give no support to their argument. Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191 (2nd Cir. 1989), is inapposite because it involved a shipment wholly within the United States and thus was not governed to the Warsaw Convention. Insurance Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc., 201 F.3d 1111 (9th Cir. 2000), although dealing with an international shipment of goods, considered the loss of goods from a transoceanic shipment, and thus the Warsaw Convention also did not apply. The only case Panalpina cites that offers any support for their position is Martin Marietta, 950 F. Supp. 1250, which resorted to course of

dealing to determine whether a party in Panalpina's position could be considered a first carrier. In that case the air waybill contained no information at all regarding the first carrier, thus distinguishing it from the case at bar. We therefore decline to read an exception into the Warsaw Convention for parties who have a continuous course of dealing.

We are cognizant of the fact that the loss of limited liability for information that Panalpina has termed "inconsequential details" could seem a harsh outcome. As courts before us have noted, however, the Convention's mandates are clear and compliance with them is not an onerous burden to place on the carrier. Tai Ping, 94 F.3d at 33; Sotheby's v. Federal Express Corp., 97 F. Supp. 2d 491, 501 (S.D.N.Y. 2000); Fireman's Fund, 2001 WL 32847, at *4. Failing to list Miami and incorrectly identifying the first carrier are hardly inconsequential details.

Under the Warsaw Convention and applicable case law, a shipper who provides incorrect information on an air waybill may not limit their liability under the provisions of the Convention. Therefore, this court finds that Panalpina's waybill fell short of the Convention's requirements, so it may not avail itself of the limited liability provisions of the Warsaw Convention, and Fireman's motion for summary judgment as to that issue is granted.

C. Amount of Damages Owed

Beyond the value of the lost goods, $45,650, Fireman's has supplied us with no facts regarding the amounts of recovery it seeks. Without such facts, this court cannot determine the correct amount Panalpina owes Fireman's on a motion for summary judgment. Therefore, Fireman's motion to award damages of the value of the phones, interest, costs, and attorneys' fees is denied.

## CONCLUSION

For the foregoing reasons, we grant Fireman's motions for summary judgment on the issues of liability and limitation of liability under the Warsaw Convention and deny its motion for summary judgment on the issue of the amount of damages.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: _____August 23, 2001_____